**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| Eric Schlueter,  individually and as representative of a class of all others similarly situated and on behalf of the BNBuilders, Inc. Employee Stock Ownership Plan,<br><br>Plaintiff,<br><br>vs.<br><br>BNBuilders, Inc., Brad Bastian, Casey R. Blake, Jason Limp, the BNBuilders, Inc. Board of Directors, GreatBanc Trust Company, Jeffrey Sebenik, James L. Charpentier, Steven James Awford, Michael Sean Herzog, Ross Hawkinson Brown, Daniel Huber, Tony Alejandro Castillo,<br><br>Defendants. | Case No.: 2:25-cv-01713-JHC<br><br>**AMENDED COMPLAINT—CLASS ACTION** |

## I.     INTRODUCTION

1.     Plaintiff Eric Schlueter brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking plan-wide relief on behalf of the BNBuilders, Inc. Employee Stock Ownership Plan (the "ESOP" or the "Plan") and class-wide relief on behalf of a class of similarly situated ESOP participants and their beneficiaries as defined below.

AMENDED CLASS ACTION COMPLAINT             1

2.      BNBuilders, Inc. (the "Company" or "BNBuilders") is a Western United States general contractor that specializes in commercial construction projects.

3.      BNBuilders was founded in 2000 and has described itself as "one of the fastest growing construction firms along the West Coast." Brad Bastian and the former owners of BNBuilders (Jason Limp, Jeffrey Sebenik, James L. Charpentier, Casey R. Blake, Steven James Awford, Michael Sean Herzog, Ross Hawkinson Brown, Daniel Huber, and Tony Alejandro Castillo) have reported that they sold 100% of BNBuilders to the ESOP for $206,508,990 or $29.13 per share on December 23, 2021, through a series of inter-related steps and/or transactions collectively referred to as the "ESOP Transaction" or the "Transaction." The sellers of BNBuilders stock are collectively referred to as the "Sellers" or "Seller Defendants." The Sellers created the ESOP for the express purpose of providing them a liquidity event while retaining ownership and control of the Company.

4.      For example, the BNBuilders Board membership did not change at all immediately after the ESOP purchased the Company. Brad Bastian (the majority owner) has been on the BNBuilders, Inc. Board since its founding in 2000 and never ceded any control of his Board Chairman seat through today. Two other Sellers—Casey R. Blake and Jason Limp—also served on the Board during the time of the ESOP Transaction. These Board of Directors members are collectively referred to as the "Board" or the "Board Defendants."

5.      Plaintiff and other employee-participants (whose ESOP retirement accounts were used to purchase 100% of BNBuilders stock from the Sellers) were not given an opportunity to negotiate or otherwise take part in the determination of the price that they paid for BNBuilders stock. They learned of the ESOP Transaction after it was completed and the $206 million purchase price was approved, by which time the ESOP was left deeply in debt and the Sellers received $206.5 million.

6.      Rather than involving the employees whose retirement accounts would be used to buy BNBuilders, the Sellers' advisors (who were paid a commission if the Transaction closed)

AMENDED CLASS ACTION COMPLAINT        2

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

identified GreatBanc Trust Company ("GreatBanc" or the "Trustee") to be the ESOP trustee because they believed GreatBanc would approve the Transaction and not aggressively negotiate the purchase price.

7.    The ESOP Trustee was supposed to be an independent third party acting with undivided loyalty to the ESOP and its participants. However, and as discussed *infra*, Defendant Bastian, along with other Board members, maintained control over GreatBanc by, among other things, requiring the Trustee to execute the directions given by the Board, without discretion to even "question the instructions." Defendants also set up an ESOP governance structure that allowed the Board to fire GreatBanc if it did not carry out the wishes of the Board.

8.    The Sellers further cemented their control over GreatBanc by agreeing that BNBuilders would indemnify GreatBanc for all ERISA fiduciary liability in connection with the ESOP Transaction. Specifically, BNBuilders agreed in the Trust Agreement with GreatBanc that:

> [T]he Company and any subsidiaries (collectively, the "Indemnitors") shall jointly and severally release, indemnify and hold harmless the Indemnitees for any loss, cost, expense, or other damage, including (but not limited to) attorneys' fees, suffered by any of the Indemnitees resulting from, or incurred with respect to, any legal proceedings, actions, suits, arbitrations and investigations related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement and the Trust[.]

The indemnification payments are paid from the Company's assets, which are owned by the ESOP from at least 2021. This form of exculpation is illegal and void under ERISA. *See* ERISA § 410(a), 29 U.S.C. § 1110(a); *Johnson v. Couturier*, 572 F.3d 1067, 1080 (9th Cir. 2009); *Hurtado v. Rainbow Disposal Co.*, 2018 WL 3372752, at *15-16 (C.D. Cal. July 9, 2018).

9.    The Board Defendants and the Trustee took several actions to cause the newly created ESOP to buy BNBuilders from the Sellers at an inflated price of $206 million in a single integrated transaction (referred to as the "ESOP Transaction" or the "Transaction").

10.    There is no recognized market for private stock like BNBuilders', and the value of the stock should be determined based on an appropriate valuation report or stock appraisal.

AMENDED CLASS ACTION COMPLAINT                3

The documents and financial information used to value BNBuilders stock were controlled by the Board Defendants.

11.     Plaintiff and other employee-participants were not given access to the valuation reports underlying the value of the BNBuilders stock in their retirement accounts. Based on Defendants' duty to disclose all relevant information that bears upon their retirement investments in BNBuilders, Mr. Schlueter asked Defendants to provide the valuation reports prior to filing this lawsuit. However, Defendants refused to do so.

12.     The ESOP Transaction was structured so that Brad Bastian and other Board members would keep their seats on the Board after the ESOP Transaction, and for Defendant Bastian to serve as CEO (as he had previously served as President) after the ESOP Transaction. This allowed him to retain control over BNBuilders' strategy, direction, and other fundamental business decisions. By maintaining control of BNBuilders, Brad Bastian and the Board Defendants retained the power to amend the Company's bylaws and the ESOP's governing documents, to determine the Company's strategy and the direction of the business, to sell the Company in future mergers or corporate transactions, and to determine the amount and timing of dividends and stock distributions.

13.     The $206 million the ESOP paid was more than the fair market value of BNBuilders stock because the Trustee and the stock valuation the Trustee relied on did not adequately take into account that Brad Bastian and the Board Defendants—all of whom ostensibly sold their ownership interest to the ESOP—kept control over BNBuilders in many material respects, including the strategic decisions of the Company. The purchase price thus should have reflected a steep discount for the lack of control over the Company. But it did not.

14.     The Trustee and its valuation advisor also failed to adequately account for the economic conditions at the time of the Transaction such as persistent inflation and the resulting economic headwinds, including higher interest rates (affecting the demand for their construction projects) and prolonged supply chain disruptions (affecting their ability to complete and be

AMENDED CLASS ACTION COMPLAINT          4

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

compensated for projects on time). Additionally, the $206 million price was based on financial information provided by Brad Bastian and the Board Defendants, all of whom were Sellers and thus had a personal interest in painting an unduly optimistic picture of BNBuilders' financial situation. In addition, BNBuilders failed to apply a sufficient discount for lack of marketability to BNBuilders' equity value.

15.     In addition to the fact that the ESOP paid too much for BNBuilders stock, the financing terms were not entered into solely for the benefit of the ESOP and its participants. According to Department of Labor filings, the ESOP had to borrow the entire purchase price from an outside lender and through Seller Notes. As part of the integrated ESOP Transaction, the Seller Notes were subsequently reassigned to the Company, and, as a result, the ESOP entered into a note payable with the Company totaling $ 206,508,990, with a 40-year term.

16.     This left BNBuilders (and the ESOP) responsible for all $206 million in ESOP Transaction debt and required the Company to divert a significant amount of its cash flow towards annual loan payments following the Transaction. This crippling debt load would hamper the Company's ongoing operations and profitability. In short, the debt terms and cash flow requirements needed to pay the debt were not reasonable nor in the best interest of the ESOP participants.

17.     GreatBanc—and BNBuilders and the Board Defendants responsible for monitoring GreatBanc—did not give adequate consideration to these and other factors in determining the sale price for the Company. To the contrary, the Board Chairman, who was the largest Seller (Brad Bastian), was focused on promoting the Company's value for his own financial benefit.

18.     GreatBanc, for its part, failed to ensure that the ESOP paid no more than fair market value because it did not sufficiently adjust management projections to account for persistent inflation and the resulting economic headwinds, including higher interest rates and prolonged supply chain disruptions.

AMENDED CLASS ACTION COMPLAINT                5

19.     GreatBanc did not ensure that the ESOP's purchase price included a discount for lack of control to account for the fact that Defendant Bastian and the Board Defendants retained control of the Company even after the ESOP ostensibly bought 100% of BNBuilders stock.

20.     GreatBanc did not adequately discount the price for the substantial restrictions on the marketability of BNBuilders stock.

21.     GreatBanc did not adequately account for the fact that the cost of debt financing would be substantially increased through the issuance of warrants, stock appreciation rights, and/or other forms of synthetic equity.

22.     GreatBanc had a fiduciary duty under ERISA to act prudently and in the sole interest of ESOP participants, *see* 29 U.S.C. § 1104(a)(1)(A)-(B), and also had a duty to ensure that the ESOP did not engage in prohibited transactions, *see* 29 U.S.C. § 1106. The Board Defendants similarly had a fiduciary duty to monitor GreatBanc to ensure that it complied with its fiduciary responsibilities and that the ESOP did not pay more than fair market value in the Transaction. In particular, because the Board Defendants appointed GreatBanc, they had a duty to monitor their appointee and to ensure that it had accurate financial information and reasonable projections.

23.     Defendants' actions, as outlined herein, caused substantial losses to the ESOP, thereby causing Plaintiff to suffer significant losses in his individual retirement account.

24.     Plaintiff brings this action to recover the losses suffered by the ESOP and the participants and beneficiaries of the ESOP, to obtain other equitable and remedial relief as provided by ERISA, and to otherwise remedy Defendants' prohibited transactions and fiduciary breaches in violation of ERISA as outlined herein.

## II.     JURISDICTION AND VENUE

25.     **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).

AMENDED CLASS ACTION COMPLAINT          6

26.    **Personal Jurisdiction.** This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, this District, and because ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) provides for nationwide service of process.

27.    **Venue**. Venue is proper in this District and this Division because BNBuilders, Inc. and other Defendants may be found in this District and this Division. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). BNBuilders conducts business operations and employs employees found in this District and Division.

### III.    PARTIES

### A.    Plaintiff Eric Schlueter

28.    Plaintiff Eric Schlueter is a former employee of BNBuilders, who worked for BNBuilders as an IT project manager from approximately 2019 to 2025. Mr. Schlueter is a participant in the ESOP as defined by ERISA § 3(7), 29 U.S.C. § 1002(7). Mr. Schlueter is vested in the ESOP.

29.    On December 23, 2021, the Company established the ESOP as a captive buyer for shares of the Company.

### B.    BNBuilders, Inc.

30.    Defendant BNBuilders, Inc. is a Western United States general contractor that specializes in commercial construction projects headquartered in Seattle, Washington with additional offices in California and Colorado.

31.    BNBuilders (or its subsidiaries and affiliates) is or was the current or former employer of all ESOP participants.

32.    ERISA provides:

Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.

ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

AMENDED CLASS ACTION COMPLAINT        7

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

33. The written instrument(s) according to which the ESOP was established and maintained (hereinafter referred to as the "ESOP Plan Document") provide that the Company is a "Named Fiduciary" with authority to control and manage the administration of the ESOP other than the responsibilities expressly delegated to the Trustee in the Plan Document. Because the Directors (i.e., members of the Board of Directors) have all the powers and responsibility of the Company, they have the responsibilities and duties of the Company as the Named Fiduciary.

34. The ESOP Plan Document states that BNBuilders (and the Board members through whom BNBuilders acts) have the power and duty to "review[] the performance of the Trustee with respect to the Trustee's duties, responsibilities, and obligations under the Trust Agreement."

35. Through the Trust Agreement and Plan Document, BNBuilders (and the Board members through whom BNBuilders acts) have the power to terminate the Trustee on written notice without cause.

36. Accordingly, BNBuilders is an ERISA fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because it had/has discretionary control over the ESOP and the ESOP assets and it exercised control over ESOP assets.

37. At all relevant times, BNBuilders acted through its Board members. Indeed, the Plan Document recognizes that BNBuilders may delegate its fiduciary responsibilities to members of BNBuilders' Board of Directors.

**C.      Trustee Defendant**

38. Defendant GreatBanc Trust Company ("GreatBanc") is located in Lisle, Illinois. GreatBanc is the Trustee of the BNBuilders ESOP and holds, manages, and controls the ESOP's assets. GreatBanc is a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), because it exercises discretionary authority or discretionary control respecting management of the ESOP, exercises authority and control respecting management or disposition

AMENDED CLASS ACTION COMPLAINT          8

of the ESOP's assets, and/or has discretionary authority or discretionary responsibility in the administration of the ESOP.

39.     GreatBanc, on behalf of the ESOP, approved the purchase of BNBuilders stock from the Selling Defendants to the ESOP for $206 million, or $29.13 per share, which was greater than fair market value. GreatBanc approved all Transaction terms, including the ESOP's borrowing of the entire purchase price necessary to complete the Transaction, and the Company guarantee of the borrowed amount.

**D.      The Board Defendants**

40.     Defendant Brad Bastian is Chief Executive Officer and a majority owner prior to the ESOP Transaction and thus one of the primary Sellers. Defendant Bastian was a founder of the Company and has served on the BNBuilders Board since its founding in or around 2000. He has been Chairman of the Board prior to the Transaction and retains that position today. Defendant Bastian stated in a press release about the ESOP Transaction: "The move to an ESOP allows us to retain our management and leadership teams throughout the company," and "There will be no immediate change to our leadership teams."

41.     Defendant Casey R. Blake was a member of the BNBuilders Board of Directors at the time of the ESOP Transaction and has retained his Board seat through today. He was also a Seller who sold his shares in BNBuilders in the ESOP Transaction. Today, Defendant Blake is the Field Operations "Principal" of BNBuilders according to his web biography. He has been at the Company for 24 years.

42.     Defendant Jason Limp was a member of the BNBuilders Board of Directors at the time of the ESOP Transaction and has retained his Board seat through today. He was also a Seller who sold his shares in BNBuilders in the ESOP Transaction. Today, Defendant Limp is the President of BNBuilders and is still identified as a "Principal" of BNBuilders according to his web biography. He has been at the Company for 22.5 years.

AMENDED CLASS ACTION COMPLAINT                9

43. Each of the Board Defendants is a party in interest under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

44. The BNBuilders Board of Directors, Brad Bastian, Casey R. Blake, and Jason Limp are collectively referred to as the "Board" or "Board Defendants."

45. In 2021, Richard Finlay (Chief Financial Officer of BNBuilders) signed the Trust Agreement (on behalf of the Board and the Company), which appointed GreatBanc as ESOP Trustee.

46. In 2021, Mr. Finlay also signed the governing plan document for the ESOP, on behalf of the Board and the Company, setting up a governance structure whereby the Board Defendants were responsible for selecting, appointing, overseeing and monitoring the ESOP Trustee and other fiduciaries they appointed.

47. For example, under the ESOP's governing documents, the Board had/has the fiduciary power to appoint the ESOP Trustee and did, in fact, appoint GreatBanc as the ESOP Trustee.

48. Having appointed GreatBanc as the ESOP Trustee, the Board Defendants had a duty to monitor and oversee GreatBanc and ensure that it had adequately considered complete and accurate information, did not allow the ESOP to pay more than fair market value for BNBuilders stock, and was acting in conformance with its fiduciary duties.

49. The Trust Agreement provides, "[u]pon resignation or removal of the Trustee, the Company's Board of Directors shall appoint a successor trustee or trustees." The Trust Agreement also states, "[t]he Company (through its Board of Directors) shall have the right at any time" to modify or terminate the Trust Agreement.

50. Also, because BNBuilders is the ESOP's Named Fiduciary and the Board may exercise all of the Company's powers, the Board and its members acted as the Named Fiduciary for the ESOP and had the responsibility to ensure that BNBuilders was fulfilling its fiduciary duties under ERISA.

AMENDED CLASS ACTION COMPLAINT    10

51.     Accordingly, the Board Defendants had and/or exercised discretionary authority or discretionary control respecting management of the ESOP and are fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

52.     At all relevant times the Board Defendants were fiduciaries to the ESOP and had a duty to monitor the Trustee (GreatBanc).

**E.      Seller Defendants (also referred to as "Sellers")**

53.     Defendants Brad Bastian, Jason Limp, and Casey R. Blake, were each Sellers and Board members and their roles are discussed above.

54.     **Defendant Jeffrey Sebenik** sold his BNBuilders stock in the ESOP Transaction and received money or other proceeds from the ESOP. At the time of the ESOP Transaction, he was employed by BNBuilders.

55.     Defendant Sebenik is currently listed as a "Principal" of BNBuilders on the Company's website and on his LinkedIn page today. He is a member of the Board of Directors. He has been with BNBuilders for 24 years.

56.     Defendant Sebenik knew or should have known of all material facts alleged in Sections III.B, III.C, III.D, III.E, and IV and in Counts I and V of this complaint because: he has worked for BNBuilders, including in part as a Project Executive, for 24 years; he took the actions alleged; and he signed and received the Stock Purchase Agreement and other closing documents in connection with the ESOP Transaction.

57.     Defendant Sebenik also knew or should have known that the ESOP paid for control of BNBuilders that it did not receive because he knew that Defendants Bastian, Blake, and Limp were on the BNBuilders Board before the ESOP Transaction and would continue to serve as Board members after the ESOP Transaction; and he knew that he and the other Sellers would remain Principals (i.e., owners) of BNBuilders despite the Company's representations to the U.S. Department of Labor and others that the ESOP would acquire 100% of BNBuilders in the ESOP Transaction.

AMENDED CLASS ACTION COMPLAINT          11

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

58. On information and belief, Defendant Sebenik knew or should have known about BNBuilders' financial performance and/or participated in the preparation of materials about BNBuilders used to value the Company in the ESOP Transaction.

59. Therefore, Defendant Sebenik knew or should have known about the prohibited transactions and fiduciary breaches alleged herein, and knowingly participated in these prohibited transactions.

60. **Defendant James L. Charpentier** sold his BNBuilders stock in the ESOP Transaction and received money or other proceeds from the ESOP. At the time of the ESOP Transaction, he was employed by BNBuilders and was an officer of the Company: Business Development Director.

61. He is currently listed as a "Principal" of BNBuilders on the Company's website today. He has been with BNBuilders for 18 years.

62. Defendant Charpentier knew or should have known of all material facts alleged in Sections III.B, III.C, III.D, III.E, and IV and in Counts I and V of this complaint because: he has worked for BNBuilders for 18 years; he took the actions alleged; and he signed and received copies of the Stock Purchase Agreement and other closing documents in connection with the ESOP Transaction.

63. Defendant Charpentier also knew or should have known that the ESOP paid for control of BNBuilders that it did not receive because he knew that Defendants Bastian, Blake, and Limp were on the BNBuilders Board before the ESOP Transaction and would continue to serve as Board members after the ESOP Transaction; and he knew that he and the other Sellers would remain Principals (i.e., owners) of BNBuilders despite the Company's representations to the U.S. Department of Labor and others that the ESOP would acquire 100% of BNBuilders in the ESOP Transaction.

AMENDED CLASS ACTION COMPLAINT          12

64. On information and belief, Defendant Charpentier knew or should have known about BNBuilders' financial performance and/or participated in the preparation of materials about BNBuilders used to value the Company in the ESOP Transaction.

65. Therefore, Defendant Charpentier knew or should have known about the prohibited transactions and fiduciary breaches alleged herein, and thus, knowingly participated in these prohibited transactions.

66. **Defendant Steven James Awford** sold his BNBuilders stock in the ESOP Transaction and received money or other proceeds from the ESOP. At the time of the ESOP Transaction, he was employed by BNBuilders.

67. He is currently listed as a "Principal" of BNBuilders on the Company's website today. He has been with BNBuilders for 11 years.

68. Defendant Awford knew or should have known of all material facts alleged in Sections III.B, III.C, III.D, III.E, and IV and in Counts I and V of this complaint because: he has worked for BNBuilders for 11 years; he took the actions alleged; and he signed and received the Stock Purchase Agreement and other closing documents in connection with the ESOP Transaction.

69. Defendant Awford also knew or should have known that the ESOP paid for control of BNBuilders that it did not receive because he knew that Defendants Bastian, Blake, and Limp were on the BNBuilders Board before the ESOP Transaction and would continue to serve as Board members after the ESOP Transaction; and he knew that he and the other Sellers would remain Principals (i.e., owners) of BNBuilders despite the Company's representations to the U.S. Department of Labor and others that the ESOP would acquire 100% of BNBuilders in the ESOP Transaction.

70. On information and belief, Defendant Awford knew or should have known about BNBuilders' financial performance and/or participated in the preparation of materials about BNBuilders used to value the Company in the ESOP Transaction.

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

71. Therefore, Defendant Awford knew or should have known about the prohibited transactions and fiduciary breaches alleged herein, and thus, knowingly participated in these prohibited transactions.

72. **Defendant Michael Sean Herzog** sold his BNBuilders stock in the ESOP Transaction and received money or other proceeds from the ESOP. At the time of the ESOP Transaction, he was employed by BNBuilders and was an officer of the Company: Director of Pre-Construction.

73. He is currently listed as a "Principal" of BNBuilders on the Company's website today. He has been with BNBuilders for 24 years.

74. Defendant Herzog knew or should have known of all material facts alleged in Sections III.B, III.C, III.D, III.E, and IV and in Counts I and V of this complaint because: he has worked for BNBuilders for 24 years; he took the actions alleged; and he signed and received the Stock Purchase Agreement and other closing documents in connection with the ESOP Transaction.

75. Defendant Herzog also knew or should have known that the ESOP paid for control of BNBuilders that it did not receive because he knew that Defendants Bastian, Blake, and Limp were on the BNBuilders Board before the ESOP Transaction and would continue to serve as Board members after the ESOP Transaction; and he knew that he and the other Sellers would remain Principals (i.e., owners) of BNBuilders despite the Company's representations to the U.S. Department of Labor and others that the ESOP would acquire 100% of BNBuilders in the ESOP Transaction.

76. On information and belief, Defendant Herzog knew or should have known about BNBuilders' financial performance and/or participated in the preparation of materials about BNBuilders used to value the Company in the ESOP Transaction.

AMENDED CLASS ACTION COMPLAINT          14

77. Therefore, Defendant Herzog knew or should have known about the prohibited transactions and fiduciary breaches alleged herein, and thus, knowingly participated in these prohibited transactions.

78. **Defendant Ross Hawkinson Brown** sold his BNBuilders stock in the ESOP Transaction and received money or other proceeds from the ESOP. At the time of the ESOP Transaction, he was employed by BNBuilders.

79. He is currently listed as a "Principal" of BNBuilders on the Company's website today. He has been with BNBuilders for 13 years.

80. Defendant Brown knew or should have known of all material facts alleged in Sections III.B, III.C, III.D, III.E, and IV and in Counts I and V of this complaint because: he has worked for BNBuilders for 13 years; he took the actions alleged; and he signed and received the Stock Purchase Agreement and other closing documents in connection with the ESOP Transaction.

81. Defendant Brown also knew or should have known that the ESOP paid for control of BNBuilders that it did not receive because he knew that Defendants Bastian, Blake, and Limp were on the BNBuilders Board before the ESOP Transaction and would continue to serve as Board members after the ESOP Transaction; and he knew that he and the other Sellers would remain Principals (i.e., owners) of BNBuilders despite the Company's representations to the U.S. Department of Labor and others that the ESOP would acquire 100% of BNBuilders in the ESOP Transaction.

82. On information and belief, Defendant Brown knew or should have known about BNBuilders' financial performance and/or participated in the preparation of materials about BNBuilders used to value the Company in the ESOP Transaction.

83. Therefore, Defendant Brown knew or should have known about the prohibited transactions and fiduciary breaches alleged herein, and thus, knowingly participated in these prohibited transactions.

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

84.    **Defendant Daniel Huber** sold his BNBuilders stock in the ESOP Transaction and received money or other proceeds from the ESOP. At the time of the ESOP Transaction, he was employed by BNBuilders.

85.    He is currently listed as a "Principal" of BNBuilders on the Company's website today. He has been with BNBuilders for 11 years.

86.    Defendant Huber knew or should have known of all material facts alleged in Sections III.B, III.C, III.D, III.E, and IV and in Counts I and V of this complaint because: he has worked for BNBuilders for 11 years; he took the actions alleged; and he signed and received the Stock Purchase Agreement and other closing documents in connection with the ESOP Transaction.

87.    Defendant Huber also knew or should have known that the ESOP paid for control of BNBuilders that it did not receive because he knew that Defendants Bastian, Blake, and Limp were on the BNBuilders Board before the ESOP Transaction and would continue to serve as Board members after the ESOP Transaction.

88.    He knew that he and the other Sellers would remain Principals (i.e., owners) of BNBuilders despite the Company's representations to the U.S. Department of Labor and others that the ESOP would acquire 100% of BNBuilders in the ESOP Transaction.

89.    On information and belief, Defendant Huber knew or should have known about BNBuilders' financial performance and/or participated in the preparation of materials about BNBuilders used to value the Company in the ESOP Transaction.

90.    Therefore, Defendant Huber knew or should have known about the prohibited transactions and fiduciary breaches alleged herein, and thus, knowingly participated in these prohibited transactions.

91.    **Defendant Tony Alejandro Castillo** sold his BNBuilders stock in the ESOP Transaction and received money or other proceeds. At the time of the ESOP Transaction, he was

AMENDED CLASS ACTION COMPLAINT            16

employed by BNBuilders and was an officer of the Company as part of the Regional Leadership Team.

92. He is currently listed as a "Principal" of BNBuilders on the Company's website today. He has been with BNBuilders for 15 years.

93. Defendant Castillo knew or should have known of all material facts alleged in Sections III.B, III.C, III.D, III.E, and IV and in Counts I and V of this complaint because: he has worked for BNBuilders for 15 years; he took the actions alleged; and he signed and received the Stock Purchase Agreement and other closing documents in connection with the ESOP Transaction.

94. Defendant Castillo also knew or should have known that the ESOP paid for control of BNBuilders that it did not receive because he knew that Defendants Bastian, Blake, and Limp were on the BNBuilders Board before the ESOP Transaction and would continue to serve as Board members after the ESOP Transaction; and he knew that he and the other Sellers would remain Principals (i.e., owners) of BNBuilders despite the Company's representations to the U.S. Department of Labor and others that the ESOP would acquire 100% of BNBuilders in the ESOP Transaction.

95. On information and belief, Defendant Castillo knew or should have known about BNBuilders' financial performance and/or participated in the preparation of materials about BNBuilders used to value the Company in the ESOP Transaction.

96. Therefore, Defendant Castillo knew or should have known about the prohibited transactions and fiduciary breaches alleged herein, and thus, knowingly participated in these prohibited transactions.

97. Defendants Brad Bastian, Jason Limp, Jeffrey Sebenik, James L. Charpentier, Casey R. Blake, Steven James Awford, Michael Sean Herzog, Ross Hawkinson Brown, Daniel Huber, and Tony Alejandro Castillo are collectively referred to as the "Sellers" or "Seller Defendants."

AMENDED CLASS ACTION COMPLAINT    17

98.     At the time of the ESOP Transaction, each of the Sellers was a party-in-interest within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14) because each of them was an employee, officer or director of the Company.

99.     The Sellers sold 100% of BNBuilders to the ESOP for $206 million in 2021. However, each of the Sellers is still listed as a "Principal" on BNBuilders' website.

### IV.     FACTUAL ALLEGATIONS

**A.     The Board Defendants Created a Willing Buyer through the ESOP**

100.     According to publicly available documents, BNBuilders was founded in 2000 by Brad Bastian and others.

101.     In or around 2021, Brad Bastian and the Seller Defendants decided to sell their stake in the Company by creating a retirement plan (the BNBuilders ESOP) that would borrow hundreds of millions of dollars to purchase 100% of the BNBuilders stock they owned.

102.     To effectuate the sale of Brad Bastian's and the other Seller Defendants' interest, they established the ESOP, an ERISA-protected defined contribution plan where employer contributions made on behalf of employees are invested in the employer's stock (here, BNBuilders stock). ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6); *see also* 29 C.F.R. § 2550.407d–6 (2024) (definition of the term "employee stock ownership plan").

103.     The ESOP is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

104.     The ESOP is an individual account plan, or defined contribution plan, under which a separate individual account has been established for each participant. Employees of BNBuilders and its subsidiaries participate in the ESOP.

105.     As an ERISA-protected ESOP, employer contributions made on behalf of employees are invested in the employer's stock. ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6); *see also* 29 C.F.R. § 2550.407d–6 (definition of the term "employee stock ownership plan").

AMENDED CLASS ACTION COMPLAINT          18

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

106. The terms of the ESOP specify that the amount of employer contributions is discretionary and determined by the Company's Board.

107. The employer contributions, invested in employer stock, are part of employee compensation and comprise an important part of employee retirement savings. Courts have long recognized that an "ESOP's assets [are] part of the overall benefits and compensation package offered to employees who participate[] in the Plan," and that "[e]mployee benefits are not a mere gratuity, but a form of deferred wages." *Neil v. Zell*, 767 F. Supp. 2d 933, 943 (N.D. Ill. 2011) (quoting *Reich v. Valley Nat. Bank of Ariz.*, 837 F. Supp. 1259, 1286-87 (S.D.N.Y. 1993)).

108. The price the ESOP paid for shares of the Company's stock is a fiduciary decision that has long-term effects on employees' retirement security. Overpaying for Company stock in an ESOP transaction causes the participants to receive fewer pension benefits than they are entitled to by law. *Chao v. Hall Holding Co.*, 285 F.3d 415, 444 (6th Cir. 2002) ("Defendants, by arguing that the initial price of the stock does not matter, essentially ignore the fact that the money paid for the Hall Holding stock was a form of deferred compensation for the participants in the Hall Chemical ESOP. However, because the Hall Chemical ESOP overpaid for the shares of Hall Holding stock, it suffered a loss.").

109. Because—and only because—an ESOP contribution qualifies as **employee compensation**, an employer can deduct the total value of its ESOP contribution from its income tax liability as an ordinary business expense. 26 U.S.C. § 404; 26 C.F.R. § 1.404(a)–1(b) (2022).

110. The Company intended the ESOP to qualify for favorable tax treatment and sought favorable tax treatment from the IRS since the ESOP's creation.

111. The Plan is identified in Department of Labor filings as a "Leveraged ESOP," and it is designed to invest in the employer securities of BNBuilders.

112. Because the ESOP is fully leveraged, under the terms of the ESOP, employer contributions made to the ESOP are used to pay down the loan taken out by the ESOP to acquire the Company's stock (the "Acquisition Loan").

AMENDED CLASS ACTION COMPLAINT          19

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

113. Under the terms of the ESOP, shares are released for allocation into participant accounts as the principal on the Acquisition Loan is paid down. Employer contributions that are used to pay the interest expense of a loan do not result in shares being allocated to participant accounts. As such, all else equal, the higher the rate of interest on the acquisition loan, the fewer the shares allocated to participant accounts in a given year.

114. Under the terms of the ESOP, participants (including Plaintiff) are entitled to an allocation of Company stock to their individual accounts generally based on the ratio of the participant's compensation to the total compensation of all participants in the respective year.

115. The amount of employer contributions the participants receive are not dependent on the price paid for Company stock. As a result, if the ESOP paid more than fair market value for Company stock, fewer shares are allocated to each ESOP participant's account.

## B. The ESOP Transaction

116. According to a Form 5500 filed with the Department of Labor, on December 23, 2021, the ESOP purchased over 7,000,000 shares of the Company's stock, for a total price of $206,508,990. This translates to an average per-share price of $29.13.

117. As part of the integrated Transaction, the ESOP had to borrow the entire purchase price from an outside lender and Seller Notes, and they were subsequently reassigned to the Company as a loan from the Company to the ESOP. The ESOP thus became obligated to make a note payable to the Company for the full purchase price. The loan agreement provides for the loan to be repaid over 40 years.

118. The Sellers, BNBuilders, and/or Board members engaged investment banking firm Verit Advisors ("Verit") to advise it through the Transaction. Verit served as a financial advisor to BNBuilders and led the ESOP structuring, financing process, and execution on behalf of the Company.

119. BNBuilders, acting through the Board, selected and appointed GreatBanc to serve as the ESOP Trustee. As a trustee charged with approving the terms of the ESOP Transaction,

AMENDED CLASS ACTION COMPLAINT         20

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

GreatBanc was required to (among other things) perform due diligence into BNBuilders' business and, along with other ESOP fiduciaries—*e.g.*, BNBuilders and the Board—to ensure that the valuation of BNBuilders stock was based on accurate and reasonable information and that the ESOP paid no more than fair market value for the Company's stock.

120. The Company agreed to indemnify GreatBanc for its role in the ESOP Transaction and also agreed to indemnify all Board members for any civil action they become a party to due to their role as members of the Board of Directors, which would include their role as fiduciaries with the responsibility to appoint and monitor the ESOP Trustee with respect to the Transaction.

121. GreatBanc has been sued for violations of ERISA dozens of times, including by the Department of Labor. To resolve claims against it, GreatBanc agreed with the DOL to engage in a list of baseline fiduciary process steps set forth in the "Agreement Concerning Fiduciary Engagements and Process Requirements for Employer Stock Transactions." *Solis v. GreatBanc Tr. Co.*, No. 5:12-cv-01648-R-DTB, ECF 166-1 (C.D. Cal. June 2, 2014). Those fiduciary process steps included that GreatBanc would evaluate the solvency of an ESOP-purchased company post-transaction to ensure that the company was reasonably able to service the debt from the ESOP transaction. Here, GreatBanc failed to ensure that BNBuilders could reasonably service the Transaction debt. Further, the Agreement provided that GreatBanc will "[c]ritically assess the reasonableness of any projections (particularly management projections)." However, GreatBanc failed to perform this assessment.

### C. The ESOP Overpaid for BNBuilders Stock

122. Despite their duty to monitor GreatBanc, BNBuilders and its Board members failed to establish and implement a governance structure for the ESOP Transaction that was in the interest of ESOP participants consistent with their fiduciary duties to monitor the Trustee and ensure that the ESOP did not pay more than fair market value.

123. Prior to the Transaction, the Board Defendants—all of whom were Sellers—suffered a fundamental, structural conflict of interest because they stood to benefit from the

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

ESOP's overpayment. They failed to mitigate their conflicts and failed to adequately monitor and oversee GreatBanc to ensure it was performing its Trustee duties appropriately.

124. Given their severe conflict as Board members with fiduciary responsibilities to the ESOP and as Sellers who stood to gain from an inflated price, they should have formally delegated responsibility for selecting and then monitoring GreatBanc to a non-conflicted fiduciary, but they failed to do so.

125. The Trust Agreement states that, prior to December 23, 2021, BNBuilders (then controlled by and acting through the Board Defendants) appointed GreatBanc as the ESOP's Trustee, which was a fiduciary act. This appointment required them to monitor GreatBanc and to furnish accurate and complete information concerning BNBuilders' operations and future projected performance in connection with the ESOP Transaction.

126. GreatBanc, as the Trustee, was duty bound to evaluate the Company's operations and zealously negotiate the purchase price and other terms with the Sellers. GreatBanc was further required to thoroughly consider and document the risks associated with the Company's projections, determine that they were reasonable, and if not reasonable, insist that the Company adjust them accordingly.

127. During the ESOP Transaction, GreatBanc and the Board Defendants were duty bound to ensure that the ESOP did not pay more than fair market value for the BNBuilders stock it purchased.

128. Yet the Board Defendants did not select the Trustee because they believed GreatBanc would perform a thorough and rigorous evaluation of the sale price and other Transaction terms. To the contrary, GreatBanc was identified by the Board and Sellers' advisors (including Verit, who would receive a success fee for closing the Transaction) because these advisors had pre-existing relationships with GreatBanc that led them to believe GreatBanc would approve the Transaction without aggressively negotiating with the Sellers. And that is what occurred.

AMENDED CLASS ACTION COMPLAINT                22

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

129.    For example, prior to the ESOP Transaction, GreatBanc understood and agreed that Brad Bastian would remain Chairman of the Board and CEO even after the ESOP Transaction. Indeed, Brad Bastian retains these roles to this day, which allows him to retain control of the Company he sold for $206 million. Similarly, GreatBanc understood that all Board members prior to the Transaction (Bastian, Blake, and Limp) would keep their board seats and would retain control over a majority of the BNBuilders Board even after the ESOP purchased 100% of the Company stock.

130.    While BNBuilders reported to the government that the Company become **100%** ESOP owned in 2021, its January 31, 2022 press release states that: "The move to an ESOP allows us to retain our management and leadership teams through the company. There will be no immediate change to our leadership teams."

131.    In fact, at the time of this filing, BNBuilders' website lists eleven (11) senior executives as "Principals" (i.e., owners) of the Company, which indicates that certain "Principals" retained an ownership stake in BNBuilders even after the ESOP reportedly purchased 100% of the Company.

132.    The Board Defendants (Bastian, Blake, and Limp) were Board members prior to and after the Transaction. Because they retained majority control of the Board, they retained control over BNBuilders' strategy, the amount and timing of dividends and stock distributions, the power to amend the Company's bylaws and the ESOP's governing documents, and other fundamental business decisions.

133.    In addition, the Board Defendants effectively controlled GreatBanc given they had unilateral power to fire the Trustee if they did not like the decisions the Trustee made.

134.    The ESOP's governing documents give BNBuilders—which was and is controlled by the Board Defendants—unilateral power to remove the Trustee "at any time" and gives the Board the power to pick the replacement for the Trustee.

AMENDED CLASS ACTION COMPLAINT          23

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

135.    The governing documents also provide that the Trustee "shall have no power, authority, or duty to interpret the Plan or to inquire into the decisions or determinations of the Plan Administrator, or to question the instructions given by the Plan Administrator." The Trustees' role is thus limited to executing the directions given by BNBuilders, acting through its Board.

136.    The governing documents further state that the Trustee is not liable for actions taken under the "proper directions of the Plan Administrator." The Trustee is effectively shielded from liability for actions taken at the Company's direction, reinforcing that BNBuilders drives decisions within the ESOP.

137.    Together, these provisions show that GreatBanc was not truly "independent."

138.    This lack of independence compromised not only GreatBanc's investigation of the Transaction terms including price, but also the ongoing management of BNBuilders. With limited exception, Plan participants did not have majority power to vote on shareholder matters.

139.    As noted above, the Trustee approved a sale price of $206,508,990 million for 7,090,000 shares of the Company's stock, or $29.13 per share. This amount exceeded the fair market value of the Company at the time of the Transaction and is greater than what a buyer, under no compulsion to buy BNBuilders, would have paid in an arm's length negotiation for the non-controlling and non-marketable interest sold.

140.    The purchase price that the ESOP paid in December 2021 ($206,508,990) far exceeded the fair market value of the purchased shares.

141.    According to financial statements filed by the ESOP with the Department of Labor, the value of the BNBuilders stock purchased by the ESOP for $29.13 per share was just $3.20 per share at year-end 2021, $9.27 per share at year-end 2022, and $10.30 per share at year end 2023.

AMENDED CLASS ACTION COMPLAINT            24

### D. Flawed Valuation Ignored Key Factors Affecting Fair Market Value

142. The purchase price of over $206 million and GreatBanc's fiduciary process and due diligence to justify that price suffered from a number of serious flaws that any prudent and diligent fiduciary, acting in the best interest of the ESOP and its participants, should have discovered and adjusted for. Here, GreatBanc did not do so.

143. *First*, in determining the purchase price, GreatBanc and its valuation advisor failed to adequately account for persistent inflation and the resulting economic headwinds, including higher interest rates (affecting the demand for their construction projects) and prolonged supply chain disruptions (affecting their ability to complete and be compensated for projects on time), all of which was known or knowable at the time of the ESOP Transaction.

144. After years of low inflation, prices began rising rapidly in 2021. Inflation initially appeared "transitory," with policymakers, such as the Federal Reserve, expecting inflation to ease as supply chains normalized.

145. However, by October 2021 (or earlier), the consumer price index reports showed that the temporary deceleration of inflation from April to September 2021 was **short lived** and that **year-over-year inflation had topped 6%**. By mid-December 2021, the Federal Reserve had announced its view that inflation was not transitory and would require intervention in the form of increased interest rates.

146. Given the Federal Reserve's public statements concerning inflation, GreatBanc and its valuation advisor knew or should have known that the supply chain issues were not going to quickly abate and that their financial performance during the 5-year projection period (2022-2026) would face increased headwinds as higher interest rates impaired economic activity (particularly debt-sensitive activity like large scale construction projects).

147. The Board Defendants provided GreatBanc with financial projections that assumed strong demand for BNBuilders' services would continue. However, large scale construction activity—and hence demand for BNBuilders services—is heavily reliant on

AMENDED CLASS ACTION COMPLAINT          25

affordable financing, which would not exist for the forecast period used for the valuation of BNBuilders stock (2022-2026). Also, the long-term reality of high inflation and the Federal Reserve tightening monetary policies were known by December 15, 2021. Thus, the financial projections should have been revised downwards to account for these facts, but they were not.

148.    By mid-December of 2021, the Federal Reserve made clear that it would engage in aggressive interest rate hikes to stem the surge in inflation. As a result, BNBuilders would be forced to operate in an environment where the cost of debt skyrocketed and the rapid  rise in interest rates would have a major impact on debt-reliant industries, like large scale construction projects and real estate development. As a result, the financial projections should have been revised downwards to account for the Company's reduced revenues in a high interest rate environment. The Federal Reserve did in fact raise rates from near zero to over 4% in 2022, which was the fastest tightening cycle since the 1980s.

149.    As reflected in the following chart, the cost of debt increased substantially—a trend that was widely known starting in 2020 (well before the ESOP Transaction):



FRED — Market Yield on U.S. Treasury Securities at 10-Year Constant Maturity, Quoted on an Investment Basis

Source: Board of Governors of the Federal Reserve System (US) via FRED®
Shaded areas indicate U.S. recessions.

fred.stlouisfed.org

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

150.    As a result of the facts known by mid-December 2021, the Company would face substantial headwinds as demand dried up. As just one example, public and semi-public building construction projects depends on municipal bonds or public-private partnerships. When the persistent inflation caused the Federal Reserve to hike interest rates, bond issuance became more expensive, which meant governments were forced to delay or restructure long-term public building construction, such as fire stations, libraries, police offices, commuter train stations, and juvenile detention centers, all of which affected demand for BNBuilders' services.

151.    Moreover, the main driver of BNBuilders' growth came from entering into partnerships with existing construction companies in West Coast cities, which required capital that would be more expensive in the high interest rate environment. It was therefore known or knowable that the Company's historic growth was not achievable during the projection period.

152.    Furthermore, much of the Company's growth came from "partnerships" with construction companies that were not contractually obligated to contribute their revenue, EBITDA and profits to BNBuilders, Inc. For example, in 2015 the Company was forced to sue one of its partners (BNBT) for a court-ordered declaration that they were indeed "partners." Without court intervention, BNBuilders was unable to book the revenue and profits associated with BNBT's operations. Based on the governing document for the ESOP, there were several "partnerships" similar to BNBT that are referred to as "affiliates," which, on information and belief, were not contractually obligated to contribute their revenue and profits to BNBuilders, Inc.

153.    All of these substantial risks and headwinds for BNBuilders' revenues and operations—which were known prior to closing the Transaction—were not adequately accounted for in the valuation that GreatBanc relied upon to justify the ESOP's purchase price of $206.5 million.

AMENDED CLASS ACTION COMPLAINT          27

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

154.    *Second*, the sale price failed to adequately take account of the fact that the ESOP did not purchase a controlling interest in BNBuilders. In other words, the ESOP paid for control of the Company, which it did not receive.

155.    Since at least 2017, the Company's Board of Directors has included Brad Bastian, who has served as the President and CEO. Two other Sellers (Casey R. Blake and Jason Limp) were also Board members prior to the Transaction, and all three Board Defendants retained control of the Board through at least 2024 (several years after the ESOP Transaction). Despite the ESOP's ostensible 100% ownership stake, actual control of the BNBuilders Board remained in the hands of the Board Defendants, meaning they retained control of the Company even after selling their ownership interest to the ESOP.

156.    As discussed above, the Sellers and GreatBanc came to an understanding that the Board members prior to the Transaction (Bastian, Blake, and Limp) would retain their Board seats and Bastian would remain Chairman of the Board. Because this allowed Brad Bastian and the Board Defendants to retain control over BNBuilders' strategic direction and management, the fair market value of BNBuilders stock should have reflected a steep discount for the lack of control over the Company. But the $206.5 million purchase price did not.

157.    Because the ESOP participants did not gain meaningful control over BNBuilders as a result of the Transaction, the purchase price the ESOP paid should have been heavily discounted to reflect this lack of control. Court decisions have held that discounts for lack of control as high as 40% are appropriate.

158.    Had even a minimal discount for lack of control (10%) been applied, the ESOP would have paid approximately $20 million less than the ESOP actually did; and a 40% discount for lack of control would have resulted in the ESOP paying approximately $80 million less than the ESOP actually did. Here, the Trustee did not adequately consider which elements of control were actually being transferred via the sale and did not ensure that an appropriate discount for lack of control was used in the valuation of BNBuilders stock.

AMENDED CLASS ACTION COMPLAINT                28

159.   *Third*, the $206 million price was based on financial information provided by the Board Defendants, who ran and controlled BNBuilders during the due diligence and valuation period. Each of the Board Defendants were Sellers who had a personal interest in providing overly optimistic financial projections/information to GreatBanc and did so.

160.   The Board Defendants and GreatBanc each had a fiduciary responsibility to carefully scrutinize the financial projections to ensure that they were reasonable and did not result in the ESOP overpaying from BNBuilders stock. However, no evidence of such scrutinization of the valuation was provided in response to Plaintiff's counsel's pre-litigation request for information relating to the valuation of BNBuilders stock in connection with the Transaction.

161.   *Fourth*, the Transaction saddled the ESOP with an enormous debt burden that was effectively underwritten by the Company, which sapped its cash flows and growth potential as an ongoing business enterprise.

162.   The entire $206 million purchase price was debt-financed. This put a tremendous financial strain on the Company's operations and solvency. In addition, this severe drag on the Company's operations and solvency were not adequately reflected in the Transaction sale price.

163.   The Trustee failed to adequately consider the ESOP loan terms, the Company loan servicing obligations, and related implications for long term cash flow.

164.   The Department of Labor, as expressed through multiple settlement orders with ESOP trustees that abrogated their fiduciary duties, has stressed the importance of analyzing the impact a loan taken out to finance an ESOP transaction has on the company post-transaction. For example, as part of a required analysis pursuant to a settlement between DOL and GreatBanc, the Trustee Defendant here, the trustee was required to analyze:

> "[W]hether the ESOP sponsor will be able to service the debt taken on in connection with the transaction (including the ability to service the debt in the event that the ESOP sponsor fails to meet the projections relied upon in valuing the stock); [and] … the financial impact of the proposed transaction on the ESOP sponsor. . . ."

*Perez v. GreatBanc Tr. Co.*, 5:12-cv-01648-R-DTB, ECF 167-1 at 5 (C.D. Cal. Jun. 2, 2014).

AMENDED CLASS ACTION COMPLAINT                    29

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

165.    *Fifth*, the valuation utilized to value BNBuilders failed to apply a sufficient discount for lack of marketability to BNBuilders' equity value. As a general matter, an arm's-length buyer is willing to pay more for a highly liquid asset, and less for a highly illiquid asset.

166.    Because BNBuilders' stock has always been privately held, there is no public market on which it is traded. BNBuilders stock is far less liquid than stock in public companies like Apple or Meta, whose stock can be bought and sold in seconds to willing buyers.

167.    The Plan document includes a "put option" which allows employees to sell their shares back to the Company at fair market value subject to certain restrictions. While the valuation relied upon by GreatBanc discussed the "put option" as a key way for employees to sell their shares, that (very limited) liquidity is not available to the ESOP as a whole. In other words, the Plan's "put option" does not provide liquidity for the ESOP to itself liquidate its interest in BNBuilders. Further, the "put option" has substantial restrictions, such as limitations on the timing of when it can be exercised. Additionally, the Plan document permits the Company to repurchase shares in installments over a period of years, further limiting immediate liquidity.

168.    The Plan document also imposes a "right of first refusal" that further limits the marketability of BNBuilders' shares. Under this provision, prior to any transfer of shares to a third party, an employee must first offer the shares for purchase in writing to the Company, and if the Company does not purchase the shares, to the Trust. The Company and Trust have 14 days to exercise this right on the same terms offered by an external buyer. The shares are therefore not as valuable as they would be in an open market, justifying a significant Discount for Lack of Marketability ("DLOM").

169.    Stout Risius Ross' ("Stout's") Restricted Stock Study is a database of private placements of unregistered common stock issued through public companies and shows DLOMs as a percentage difference between the private placement price per share and the market trading

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

price per share. Stout's study shows mean and median discounts for lack of marketability as 25% and 21.3% respectively and includes a DLOM as high 91.3%.[1]

170.    In light of the substantial limitations on marketability, and the empirical data in the Stout DLOM, GreatBanc should have obtained a massive DLOM for the ESOP. However, GreatBanc obtained only a small (single-digit) DLOM, insufficient to address BNBuilders' extremely limited marketability.

171.    *Sixth*, the Sellers retained an ownership interest in BNBuilders after the ESOP Transaction even though Defendants reported to the government and employees that BNBuilders became 100% ESOP-owned in the Transaction.

172.    For example, the ESOP's Form 5500 filings reported that the ESOP purchased "100% of the Company's common stock" from the Sellers in the December 2021 ESOP Transaction. In addition, BNBuilders issued a press release in January 2022 that it transitioned to be a "100% employee-owned company."

173.    Nevertheless, the Sellers are still listed as "Principals" on BNBuilders' website today, indicating that they retained a non-disclosed ownership interest.

174.    Had the Trustee Defendant adequately considered all material facts, it would have recognized that (a) the purchase price was inflated, (b) it was not prudent and in ESOP participants' interests to complete the Transaction, and (c) the Transaction was designed to benefit the Seller Defendants rather than benefit Plan participants and their beneficiaries.

175.    In addition, the Acquisition Loans were not prudent and were not primarily for the benefit of the ESOP participants. Rather, they primarily benefitted the Sellers who were able to cash out of a non-marketable interest in the Company.

176.    In addition, Acquisition Loans put undue financial strain on the Company by eroding its cash flows and compromised the Company's long-term profitability, thus decreasing the value of the BNBuilders stock purchased by the ESOP.

---

[1] The period of the Stout Restricted Stock Study was an extended period prior to the Transaction.

AMENDED CLASS ACTION COMPLAINT                31

177. Finally, the internal rate of return on the Acquisition Loans would be substantially increased through the issuance of any warrants to the Sellers, which would not benefit the ESOP nor its participants and would raise the effective cost of the financing above reasonable rates.

**E. The Sellers Knowingly Participated in the ESOP Transaction**

178. The Sellers and Board Defendants also knew or should have known that the ESOP overpaid in the Transaction. For example, Defendant Brad Bastian was one of the primary Sellers and is CEO and Chairman of the Board of Directors of BNBuilders, on which he has served since 2000. Two other Sellers (Casey R. Blake and Jason Limp) also served on the Board and have each worked for BNBuilders for well over a decade. The remaining Sellers (Casey R. Blake, Jason Limp, Jeffrey Sebenik, James L. Charpentier, Steven James Awford, Michael Sean Herzog, Ross Hawkinson Brown, Daniel Huber, and Tony Alejandro Castillo) have also each worked for BNBuilders for over a decade and have held executive or management positions, *see supra* Section III.E. In these roles as Board members and/or as executive/management personnel, the Sellers had knowledge of BNBuilders' financial performance and operations. In addition, on information and belief, the Sellers participated in the preparation of materials about BNBuilders used to value the Company for the ESOP Transaction. *See supra* Section III.E.

179. As such, the Sellers had knowledge of the fiduciary breaches and the prohibited transactions set forth herein, and knowingly participated in and facilitated those prohibited transactions. The Sellers knew that Defendant Bastian was both selling his interest in BNBuilders, and that he was a fiduciary of the ESOP at the time, and thus a party in interest to the ESOP. The Sellers also knew that the ESOP was subject to ERISA and could not pay more than fair market value for BNBuilders stock.

180. The Sellers and Board Defendants also knew or should have known that the ESOP was overpaying for the Company for other reasons. For example, Defendants Bastian, Blake, and Limp served on the Board before and after the ESOP Transaction. Each of the Sellers and Board members knew that the Board Defendants would retain control over the Board post-ESOP

AMENDED CLASS ACTION COMPLAINT                32

Transaction. The Sellers therefore knew that the purchase price should have reflected a steep discount for the lack of control over the Company, but did not.

181. The Sellers also knew they would maintain an ownership interest in the Company post-ESOP Transaction (i.e., they each continued to be "Principals" after the ESOP Transaction).

182. All Sellers—who received all the closing documents for the ESOP Transaction—also knew the entire $206 million purchase price was debt-financed, which would put a tremendous financial strain on the Company's operations and solvency.

183. The Board Defendants knew that they provided financial information to GreatBanc that was unduly optimistic in terms of future profitability.

184. The Sellers and Board Defendants signed a number of documents in furtherance of the Transaction. For example, Brad Bastian executed amendments to the Company's corporate governance documents in connection with the ESOP Transaction. As a Seller, Bastian also executed the stock purchase agreement pursuant to which he sold his shares to the ESOP. All other Sellers would also receive and execute the stock purchase agreement and other closing documents in connection with the ESOP Transaction, which would incorporate the material terms of the deal. Similarly, Finlay, on behalf of BNBuilders and the Board, executed the Trust Agreement with GreatBanc and the governing plan document for the ESOP, which set up a governance structure whereby the Board Defendants were responsible for selecting, appointing, overseeing and monitoring the ESOP Trustee and other fiduciaries they appointed.

**F. The Sellers Retain Their Ill-Gotten Gains in their Possession**

185. The Plan Document contemplated that the Seller Defendants would invest the proceeds they received from the ESOP Transaction in "qualified replacement property" pursuant to Section 1042 of the Internal Revenue Code ("I.R.C."), in order to avoid capital gains tax on the sale of their BNBuilders stock to the ESOP. Thus, the Seller Defendants invested their proceeds from the Transaction in qualified replacement property and continue to hold such property to avoid the adverse tax consequences.

AMENDED CLASS ACTION COMPLAINT            33

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

186. Consistent with Section 1042 of the I.R.C., each Seller Defendant was required to complete a signed Statement of Purchase that identified and declared the specific securities that represent the qualified replacement property that was purchased to avoid taxes on the receipt of proceeds from the ESOP Transaction. The Statement of Purchase for each Seller Defendant who elected I.R.C. § 1042 deferral was filed with their tax return and would identify precisely the qualified replacement property held in the Sellers' account along with all investment gains thereon.

187. Thus, each Seller deposited their share of the proceeds from the Transaction in an account designated to hold "qualified replacement property" pursuant to I.R.C. § 1042 to avoid capital gains tax on the sale of their BNBuilders stock to the ESOP. Under I.R.C. § 1042, the gains on the Company stock sold to the ESOP are not taxed until the qualified replacement property is sold and capital gains taxes can be eliminated entirely if the qualified replacement property is held until the Seller's death.

## V.    CLASS ACTION ALLEGATIONS

188. Plaintiff brings his claims on behalf of the Plan pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class:[2]

> All participants in the BNBuilders ESOP on or after December 23, 2021, and those participants' beneficiaries, excluding Defendants and their immediate family members; any fiduciary of the Plan; the officers and directors of BNBuilders or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

189. **Numerosity.** The Class satisfies the numerosity requirement because it is composed of hundreds of persons. At the end of 2023, the ESOP had approximately 508 participants. The number of Class members is sufficiently large that joinder of all its members is impracticable.

---

[2] Plaintiff reserves the right to revise the class definition and to propose other or additional classes in subsequent pleadings, after discovery in this action.

AMENDED CLASS ACTION COMPLAINT                    34

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

190.    **Commonality.** This case presents numerous common questions of law and fact, including (among other things):

a.    Whether the ESOP Transaction was a prohibited transaction under ERISA;

b.    Whether the Sellers received more than adequate consideration in connection with the ESOP Transaction;

c.    Whether Defendant GreatBanc was a fiduciary to the ESOP as the ESOP Trustee;

d.    Whether the Trustee engaged in a prudent investigation of the ESOP Transaction and acted in the best interests of the ESOP and its participants in approving the ESOP Transaction;

e.    Whether BNBuilders, operating through Brad Bastian, Casey R. Blake, and Jason Limp, imprudently appointed GreatBanc as Trustee, failed to monitor the Trustee, and imprudently retained the Trustee despite its fiduciary failures, without taking appropriate corrective action;

f.    Whether the Board Defendants or any Seller Defendants were involved in the preparation of the financial projections used in valuations of BNBuilders stock that formed the basis of the ESOP purchase price of $206 million;

g.    Whether the Board Defendants and Seller Defendants provided misleading or incomplete financial information in connection with the ESOP Transaction;

h.    The amount of losses suffered by the ESOP as a result of the unlawful conduct alleged herein;

i.    The proper form of equitable and injunctive relief; and

j.    The extent to which any non-fiduciary Defendants are subject to equitable remedies and relief.

191.    **Typicality**. Plaintiff's claims are typical of the claims of the Class because (among other things): (a) he was employed by BNBuilders and participated in the ESOP; (b) Plaintiff was injured in the same manner as other Class members in connection with the ESOP

AMENDED CLASS ACTION COMPLAINT            35

Transaction and the inflated price that was paid for the Company; and (c) to the extent that Plaintiff seeks relief on behalf of the Plan pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), his claims are not only typical of, but the same as, a claim under § 502(a)(2) brought by any other Class member.

192.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class and are committed to the vigorous representation of the Class. Plaintiff's retained counsel, Cohen Milstein Sellers and Toll PLLC, are experienced in class action and ERISA litigation, and Plaintiff and his counsel have no interests antagonistic to or in conflict with the interests of the Class.

193.    **Rule 23(b)(1)(A).** Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of plan participants. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants relating to the ESOP.

194.    **Rule 23(b)(1)(B).** Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1)(B). Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the ESOP and engaged in prohibited transactions with respect to the ESOP would, as a practical matter, be dispositive of the interests of the other participants in the ESOP and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class. Further, the relief granted by the Court, including any equitable relief, injunctive relief, or accounting of profits, may be dispositive of the interests of other Class members.

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

195.    **Rule 23(b)(2).** Additionally and alternatively, class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations.

196.    **Rule 23(b)(3).** Additionally and alternatively, class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class and because a class action is superior to other available methods for the fair and efficient adjudication of this action. Common questions related to liability will necessarily predominate over any individual questions because Defendants' duties and obligations were uniform as to all ESOP participants and therefore all members of the Class, and whether Defendants breached those duties will center on their conduct rather than the conduct of individual class members. Common questions as to remedies will likewise predominate over any individual issues in light of the plan-wide claims asserted in the action and the nature of the relief sought. Further, a class action is superior to other available methods for resolving the controversy because the claims are brought on behalf of the ESOP, involve an ESOP Transaction impacting all Class members, and the issues in this litigation will be most efficiently resolved in a single proceeding rather than multiple proceedings. The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action. As such, Class members do not have an interest in individually prosecuting their claims, and Plaintiff is unaware of any similar action filed by another member of the Class. Proceeding on a class-wide basis in this forum will be desirable, manageable, and obviate the need for unduly duplicative litigation which might result in inconsistent judgments. The names and addresses of the Class members are available

AMENDED CLASS ACTION COMPLAINT        37

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

from the ESOP and/or the Company, and notice can be provided to all members of the Class to the extent required by Federal Rule 23.

## VI.    CAUSES OF ACTION
### Count I
### Prohibited Transactions in Violation of ERISA § 406(a), 29 U.S.C. § 1106(a)
### (Against GreatBanc)

197.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

198.    ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect— (A) sale or exchange, or leasing, of any property between the plan and a party in interest," "(B) lending of money or other extension of credit between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

199.    ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include

- "any fiduciary . . . of such employee benefit plan";
- "an employer any of whose employees are covered by such plan";
- "an employee, officer, director . . . or a 10 percent or more shareholder" of an employer whose employees are covered by the ESOP;
- and "a relative (as defined in paragraph (15)) of any individual described in subparagraph (A), (B), (C), or (E)[.]"

29 U.S.C. § 1002(14)(A), (C), (H), (F).

200.    GreatBanc was a fiduciary as discussed in Section III.C above.

201.    Each of the Sellers was a "party on interest" as discussed in Section III.E above.

202.    The ESOP Transaction involved the sale of property and lending of money between the ESOP and several "parties in interest," as well as the transfer of ESOP assets to parties in interest identified above.

203.    As set forth in Section IV above, GreatBanc approved the ESOP Transaction terms,

AMENDED CLASS ACTION COMPLAINT                38

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

including the price and financing terms, in violation of ERISA § 406(a)(1)(A), (B), and (D), 29 U.S.C. § 1106(a)(1)(A), (B), and (D).

204.    GreatBanc had actual or constructive knowledge that: (i) the Transaction constituted a direct or indirect sale of property between the ESOP and parties affiliated with BNBuilders (ERISA "parties in interest"); (ii) the ESOP loans constituted the lending of money between the Sellers or the Company to the ESOP primarily for the benefit of the Sellers; and, (iii) the ESOP Transaction price was more than fair market value as set forth in Section IV, *supra*.

205.    GreatBanc was hired for the purpose of ensuring the ESOP Transaction was fair to the ESOP and thus knew or should have known the aforementioned facts. Yet, in spite of such actual or constructive knowledge, GreatBanc took acts to consummate the ESOP Transaction and is thus liable for violations of ERISA § 406(a)(1)(A), (B), and (D), 29 U.S.C. § 1106(a)(1)(A), (B), and (D).

206.    Defendant GreatBanc thus caused the ESOP to pay an inflated price and take on $206 million in debt with unreasonable terms and which primarily benefitted the Sellers, all of which resulted in substantial losses to the ESOP and Plaintiff's individual account. GreatBanc is subject to appropriate relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109 for these violations of ERISA.

## Count II
### Prohibited Transaction in Violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3)
### (Against Defendants Brad Bastian, Casey R. Blake, and Jason Limp)

207.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

208.    Brad Bastian, Casey R. Blake, and Jason Limp were fiduciaries as discussed in Section III.E above.

209.    ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3) prohibits a plan fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

AMENDED CLASS ACTION COMPLAINT                39

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

210.    As set forth in Sections III.E and IV, *supra*, Brad Bastian, Casey R. Blake, and Jason Limp received consideration from the ESOP (indeed, they received more than adequate consideration) for their own personal accounts in connection with the ESOP Transaction, in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

211.    Brad Bastian, Casey R. Blake, and Jason Limp is therefore subject to appropriate relief under ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3) and ERISA § 409, 29 U.S.C. § 1109 for these violations of ERISA.

**Count III**
**Breach of Fiduciary Duties Under ERISA § 404(a)(1)(A) and (B),**
**29 U.S.C. § 1104(a)(1)(A) and (B)**
**(Against GreatBanc, BNBuilders, and Board Defendants)**

212.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

213.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) requires that a plan fiduciary act "for the exclusive purpose of . . . providing benefits to participants and [the] beneficiaries [of the plan.]"

214.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) requires that a plan fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

215.    In the context of a sale of the sponsoring company/employer to an ESOP, the duties of loyalty under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) and prudence under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) require a fiduciary ESOP trustee to undertake a prudent and diligent investigation of the sale price, the financing terms, and other transaction terms and all underlying financial projections and assumptions, in the exclusive interest of the ESOP and its participants without regard to the interests of company insiders who retained the trustee, to ensure that the ESOP and its participants pay no more than adequate consideration for the company's assets.

AMENDED CLASS ACTION COMPLAINT    40

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

216. Each of the Defendants named in this Count was a fiduciary as discussed in Section III.B–D, *supra*.

217. Based on the facts alleged above in Section IV, Defendant GreatBanc failed to undertake a prudent and loyal investigation of all terms and aspects of the integrated ESOP Transaction.

218. By failing to act prudently and loyally in participants' best interests in connection with the ESOP Transaction and the ongoing management of the ESOP, Defendant GreatBanc breached its fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) and caused losses from the ESOP's overpayment in the ESOP Transaction, which caused losses to the individual retirement accounts of ESOP participants.

219. Defendant GreatBanc caused substantial losses to the ESOP and thus is subject to appropriate relief under ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3) and ERISA § 409, 29 U.S.C. § 1109 for these fiduciary breaches in violation of ERISA.

**BNBuilders and the Board Defendants' Breach of their Duty to Monitor**

220. As alleged above, BNBuilders and the Board Defendants were ESOP fiduciaries who were responsible for fulfilling BNBuilders' fiduciary duties as set forth in the Plan Document. In addition, the Board Defendants' power to appoint and/or remove the Trustee resulted in their obligation to monitor the Trustee to ensure that it is acting in compliance with the terms of the Plan and in accordance with ERISA. *See* 29 C.F.R. § 2509.75-8 (FR-17) (2023). If the appointed fiduciary has violated or continues to violate ERISA, the monitoring fiduciary must remove the appointed fiduciary and take any other remedial action necessary to address the ERISA violations.

221. Based on the facts alleged above, BNBuilders and the Board Defendants were responsible for selecting, appointing, overseeing, and monitoring the ESOP Trustee and to provide the Trustee complete and accurate financial information and projections to be used to value the Company stock the ESOP purchased. Yet they all failed to monitor GreatBanc and

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

instead enabled GreatBanc's fiduciary violations by providing it with overly optimistic financial projections and failing to disclose the negative outlook for the Company that was known or knowable by December 2021 in light of the widely known fact that high inflation would persist long term, that the Federal Reserve would continue to keep interest rates high, and that supply chain disruptions would continue, all of which would depress the demand for BNBuilders' services.

222.   In addition, BNBuilders and the Board Defendants:

a.   failed to monitor and evaluate the performance of the Trustee, or have a system in place for doing so, to ensure that the Trustee conducted a sufficiently rigorous review of the ESOP Transaction;

b.   knew and failed to correct the fact that the Trustee was acting based on unrealistic and unreliable financial projections for BNBuilders' future revenues, cash flows, and earnings;

c.   knew and failed to correct the fact that the Transaction sale price approved by the Trustee was inflated and exceeded the fair market value of the Company and that the financing terms were unreasonably profitable for the Sellers to the detriment of the ESOP and its sole asset (BNBuilders);

d.   failed to investigate Defendant GreatBanc's appropriateness and competence as Trustee which would have identified and then avoided the problems associated with its work in connection with other transactions, *see supra* ¶ 121;

e.   orchestrated the ESOP Transaction such that the ESOP would purportedly purchase 100% of the Company's stock but the Board Defendants would retain control of the Board, and the Sellers would retain an undisclosed ownership interest in BNBuilders even after the ESOP was purportedly the 100% owner of the Company;

AMENDED CLASS ACTION COMPLAINT                42

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

f. orchestrated the ESOP's borrowing of $206 million to complete the ESOP Transaction, even though the excessive debt would put a tremendous financial strain on the Company's operations and solvency and was not primarily for the benefit of the ESOP and its participants;

g. failed to remove the Trustee when they knew that the Trustee's performance was inadequate for the reasons described herein and elsewhere in this Complaint; and

h. failed to take other appropriate remedial measures to address the Trustee's fiduciary failures as Trustee and the improper approval of the ESOP Transaction.

223. As a result of BNBuilders' and the Board Defendants' failure to monitor the Trustee's performance, the ESOP paid more than fair market value for BNBuilders stock and was forced into financing terms that were unreasonable.

224. Based on the facts alleged above, BNBuilders and the Board Defendants breached their fiduciary duty to monitor the Trustee in compliance with ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) and other applicable ERISA regulations.

225. Had BNBuilders or the Board Defendants complied with their fiduciary duties to the ESOP, the ESOP would not have paid an excessive price for BNBuilders stock, as set forth in Section IV, *supra*.

226. Defendants BNBuilders, Brad Bastian, Casey R. Blake, Jason Limp, and the Board of Directors caused substantial losses to the ESOP and thus are subject to appropriate relief under ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3) and ERISA § 409, 29 U.S.C. § 1109 for these fiduciary breaches in violation of ERISA.

**Count IV**
**Co-Fiduciary Liability Under ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3)**
**(Against BNBuilders and the Board Defendants)**

227. Plaintiff incorporates the preceding paragraphs as though set forth herein.

AMENDED CLASS ACTION COMPLAINT                43

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

228.    Each of the Defendants named in this Count was a fiduciary as discussed in Section III.B and D, *supra*. Together they are referred to as the "Co-Fiduciary Defendants."

229.    ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary."

230.    ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach."

231.    ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

232.    As alleged above, the Co-Fiduciary Defendants had management power over BNBuilders and were involved in or directed the preparation of the financial projections underlying the stock valuation that GreatBanc relied upon in determining the purchase price the ESOP paid for the Company.

233.    Given their intimate knowledge of BNBuilders' business, their unique access to Company financial information (and involvement in the preparation of such information), and their appointment of GreatBanc, the Co-Fiduciary Defendants knew that the price the ESOP paid for BNBuilders stock was inflated and exceeded fair market value. They also knew that GreatBanc was relying on overly optimistic financial projections, had been subject to dozens of lawsuits for its conduct in other ESOP transactions (including enforcement actions by the

AMENDED CLASS ACTION COMPLAINT                    44

Department of Labor), and that GreatBanc would approve the ESOP Transaction without serious pushback.

234. The Co-Fiduciary Defendants were all actively involved in the ESOP Transaction by, among other things: (1) executing numerous closing documents, (2) appointing GreatBanc, and (3) providing financial information to GreatBanc.

235. Similarly, based on the allegations above, together which demonstrate that the Co-Fiduciary Defendants failed to appropriately monitor and address the performance failures of GreatBanc, each of them enabled the fiduciary violations by GreatBanc.

236. As alleged above, the Co-Fiduciary Defendants had knowledge of the facts underlying the Trustee's breaches and knowledge that the Trustee was not appropriately monitored, but failed to make reasonable efforts under the circumstances to remedy the breaches.

237. Under ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3), each of the Defendants named in this Count are liable as co-fiduciaries for Defendant GreatBanc's fiduciary violations.

238. Had Defendants not violated their co-fiduciary duties, the ESOP would not have suffered the losses alleged herein. They are therefore subject to appropriate relief under ERISA § 409, 29 U.S.C. § 1109 and ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3) based on their co-fiduciary liability.

**Count V**
**Equitable Relief Under ERISA § 502(a)(3), 29 U.S.C § 1132(a)(3)**
**(Against Seller Defendants)**

239. Plaintiff incorporates the preceding paragraphs as though set forth herein.

240. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a court may award "other appropriate equitable relief" to redress "any act or practice" that violates ERISA. A defendant may be held liable under this section regardless of whether it is a fiduciary.

241. A non-fiduciary transferee of ill-gotten assets of the Plan is subject to equitable restitution of ill-gotten ESOP property and disgorgement of any profits thereon if the non-fiduciary had actual or constructive knowledge of the circumstances that rendered the transaction

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

or payment unlawful or if the transferee paid no consideration for the ill-gotten assets that belonged (and still belong in good conscience) to the ESOP.

242.    As discussed in Section IV.E above, the Sellers knowingly participated in the Transaction and knew or should have known that the Transaction violated ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1). Through their roles as BNBuilders Board members, officers, employees and/or executives, they knew the ESOP was a plan covered by ERISA.

243.    The Sellers knew all the facts set forth in the closing documents for the ESOP Transaction which they received and/or signed. The Sellers on the Board approved the governing Plan Document and Trust Agreement.

244.    Based on the facts alleged above, each of the Sellers knew their status as employees, officers or board members of BNBuilders, which rendered them parties in interest.

245.    The Sellers had actual or constructive knowledge that they received greater than fair market consideration, based on the allegations set forth above, including: (i) their personal familiarity with the value of their own equity interests; (ii) their access to the Company's books and records; (iii) their inside knowledge of confidential business and financial information pertaining to BNBuilders; (iv) their status as employees, officers or directors of the Company; (v) as executives who reported to the Board, they knew that the Board Defendants (all Sellers themselves) retained control over the Board even after the ESOP purchased 100% of the Company; (vi) knowledge of the excessive debt burden caused by the ESOP Transaction which was not in the best interest of ESOP participants; and (vii) that the value of the Company should have been (but was not) significantly discounted due to its lack of marketability.

246.    The Seller Defendants knowingly participated in and profited from the fiduciary breaches and prohibited transactions alleged herein with full knowledge that their stake in the Company was being unlawfully acquired for greater than fair market value.

247.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order restitution of the ESOP property the Sellers received as a result of the ESOP Transaction and

AMENDED CLASS ACTION COMPLAINT    46

disgorgement of any profits thereon, regardless of whether or not the Sellers were fiduciaries to the ESOP. As discussed above, the consideration that the Sellers received impermissibly exceeded the fair market value of their shares.

**Count VI**
**Illegal Agreement to Exculpate Fiduciary Liability in**
**Violation of ERISA § 410(a), 29 U.S.C. § 1110(a)**

**(Against Trustee Defendant and Board Defendants)**

248.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

249.    ERISA § 410(a), 29 U.S.C. § 1110(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."

250.    Indemnification agreements requiring a company owned by an ESOP to indemnify the ESOP fiduciaries are prohibited as they "would have the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations." 29 C.F.R. § 2509.75-4 (1975).

251.    As stated above, BNBuilders and the Board Defendants adopted and/or approved the Trust Agreement with Defendant GreatBanc, which states that BNBuilders will indemnify Defendant GreatBanc "for any loss, cost, expense, or other damage, including (but not limited to) attorneys' fees, suffered by any of the Indemnitees resulting from, or incurred with respect to, any legal proceedings, actions, suits, arbitrations and investigations related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement and the Trust."

252.    BNBuilders' Articles of Incorporation, as amended in 2020, likewise provide indemnification to Company directors and officers for any defense costs or liability associated with acts or responsibilities associated with their role as a Company director or officer.

AMENDED CLASS ACTION COMPLAINT          47

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

253. The indemnification and defense provisions in the Trust Agreement and Articles of Incorporation violate ERISA § 410(a), 29 U.S.C. § 1110(a) to the extent that they purport to relieve the Trustee Defendant and Board Defendants of responsibility or liability for violations of ERISA, including the ERISA violations alleged herein.

254. The Trustee Defendant and Board Defendants are fiduciaries to the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

255. If the indemnification provisions set forth above were exercised to indemnify Defendants for the ERISA violations alleged in this case, it would abrogate the ESOP's right to recovery from a breaching fiduciary and effectively require the ESOP to bear the cost of liability itself.

256. Plaintiff seeks appropriate relief under ERISA §§ 502(a)(2) and/or 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and/or 1132(a)(3) to enjoin Defendants from relying on this indemnification provision in connection with any liability or costs of defense in this case.

## VII.    PRAYER FOR RELIEF

257. Plaintiff, on behalf of himself, the ESOP, and the Class, prays that judgment be entered against Defendants on each Count and that the Court grant the following relief:

A. Declare that Defendants have violated ERISA as alleged herein;

B. Enjoin Defendants from engaging in further such violations of ERISA;

C. Order Defendants to restore all losses to the Plan that resulted from their ERISA violations or eliminate/reduce the ESOP's Transaction debt;

D. Order the Seller Defendants to disgorge all ill-gotten ESOP proceeds in connection with the ESOP Transactions (and profits thereon) and deposit them into a constructive trust for the benefit of all current and former ESOP participants;

E. Order other remedial and equitable relief that the Court deems appropriate, including but not limited to reforming or rescinding the ESOP Transaction against all

AMENDED CLASS ACTION COMPLAINT                48

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

Defendants, a surcharge against Defendants, an accounting for profits, and a constructive trust and/or equitable lien on any funds wrongfully held by any of the Defendants;

F.    Remove GreatBanc from its role as ESOP Trustee if it is found to have breached any of its fiduciary obligation to the ESOP and appoint an independent trustee for the ESOP, who has no prior relationship or dealings with the Sellers or its advisors.

G.    Enjoin the Defendants from dissipating any of the proceeds they received from the ESOP Transaction held in their actual or constructive possession until the ESOP participants' rights can be adjudicated;

H.    Enjoin the Defendants from transferring or disposing of any of the proceeds they received from the ESOP Transaction to any person or entity, which would prejudice, frustrate, or impair the ESOP participants' ability to recover the same;

I.    Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or order payment of fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

J.    Award pre-judgment interest and post-judgment interest as appropriate; and,

K.    Award such other and further relief that the Court determines is appropriate pursuant to ERISA §§ 502(a)(2) and/or (a)(3), 29 U.S.C. §§ 1132(a)(2) and/or (a)(3), or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, or that is equitable and just.

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600

DATED: November 12, 2025                    Respectfully Submitted,

/s/ *Marie E. Casciari*

Marie E. Casciari, WSBA No. 58223
DEBOFSKY LAW, LTD.
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel.: (206) 333-2696
Fax: (312) 600-4426
*mcasciari@debofsky.com*

/s/ *Michelle C. Yau*
Julie G. Reiser, WSBA No. 27485
Michelle C. Yau (*pro hac vice*)
Caroline E. Bressman (*pro hac vice*)
COHEN MILSTEIN SELLERS
  & TOLL PLLC
1100 New York Ave. NW, Eighth Floor
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
*jreiser@cohenmilstein.com*
*myau@cohenmilstein.com*
*cbressman@cohenmilstein.com*

Jacob T. Schutz (*pro hac vice*)
*jschutz@cohenmilstein.com*
COHEN MILSTEIN SELLERS
  & TOLL PLLC
400 South 4th Street # 401-27
Minneapolis, MN 55415
Tel.: (202) 408-4600
Fax: (202) 408-4699


*Counsel for Plaintiff and the Proposed Class*

AMENDED CLASS ACTION COMPLAINT                50

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 NEW YORK AVENUE NW, 8TH FLOOR
WASHINGTON, DC 20005
TEL. 202-408-4600